JUDGE KATHLEEN CARDONE

FILED

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

2023 MAY -1  AM 4: 34

U.S. DISTRICT COURT
ESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | |
|---|---|
| BRANDON CALLIER, § | |
| § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | |
| DIRECT MERCHANTS FUNDING LLC, a § | |
| Florida Limited Liability Company, and FLASH § | |
| II dba FLASH ADVANCE, a Florida Limited § | |
| Liability Company, and AR CAPITAL GROUP, § | **EP23CV0176** |
| an Unknown Business Entity § | |
| § | |
| Defendants. § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.     Defendant DIRECT MERCHANTS FUNDING LLC ("Direct Merchants") is a limited

liability corporation organized and existing under the laws of Florida and can be served via

registered agent Jacques Jannett, 3201 NE 183rd Street, Apartment 403, Aventura, Florida 33160.

3.     Defendant FLASH II LLC dba FLASH ADVANCE ("Flash Advance") is a limited

liability corporation organized and existing under the laws of Florida and can be served via

registered agent Jacques Jannett, 3201 NE 183rd Street, Apartment 403, Aventura, Florida 33160.

4.     Defendant AR CAPITAL GROUP ("AR Cap") is an unknown business entity operating

from a purported physical location of 2001 Hollywood Boulevard, Suite 305, Hollywood,

Florida 33020.  AR Cap operates the website https://arcapgroup.com

5.    Defendant Flash Advance and Defendant Direct Merchants are a common enterprise that shares common ownership, a common address, a common registered agent, and common corporate officers.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over Count I under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

7.    The Court has supplemental jurisdiction over Counts II under 28 U.S.C § 1367.

8.    This Court has specific personal jurisdiction over Defendant Direct Merchants because Defendant Direct Merchants purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Direct Merchants' purposeful contacts with Texas and the litigation:

      a.    Defendant Direct Merchants targets Texas when marketing small business loans and regularly conducts business in this District, including telephone solicitation.

      b.    Its agent AR Cap, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Direct Merchants' business funding.

      c.    These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendant Direct Merchants, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

9.    This Court has specific personal jurisdiction over Defendant Flash Advance because Defendant Flash Advance purposefully availed itself to the State of Texas and to this District,

and there is a sufficient relationship between Defendant Flash Advance's purposeful contacts
with Texas and the litigation

      a.  Defendant Flash Advance targets Texas when marketing small business loans and
           regularly conducts business in this District, including telephone solicitation.

      b.  Its agent AR Cap, called Plaintiff's El Paso-area phone number (with area code
           915) to generate leads for Flash Advance's business funding.

      c.  These calls to Texas injured Plaintiff in Texas, creating a causal link among
           Defendant Flash Advance, the forum, and the litigation that exceeds the non-
           causal affiliation that is sufficient to support personal specific jurisdiction. *See*
           *Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

10.    This Court has specific personal jurisdiction over Defendant AR Cap because AR Cap
purposefully availed itself to the State of Texas and to this District, and there is a sufficient
relationship between AR Cap's purposeful contacts with Texas and the litigation:

      a.  AR Cap targets Texas when marketing business funding and regularly conducts
           business in this District, including telephone solicitation.

      b.  AR Cap called Plaintiff's El Paso-area phone number (with area code 915) to
           generate leads for Defendants Direct Merchants and Flash Advance's business
           funding.

      c.  AR Cap's calls to Texas injured Plaintiff in Texas, creating a causal link among
           Defendant, the forum, and the litigation that exceeds the non-causal affiliation
           that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v*
           *Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

11.    Venue is proper under 28 U.S.C. § 1391(b)(2).

## THE TELEPHONE CONSUMER PROTECTION ACT

### OF 1991, 47 U.S.C. § 227

12.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

17.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19.     The FCC also recognizes that "wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

21.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## The Texas Business and Commerce Code § 302.101

25.     The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

26.     Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

27.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §
302.303.

28.    The use or employment by any person of a false, misleading, or deceptive act or practice"
causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

29.    Plaintiff personally successfully registered his phone number ending in 4604 on the
National Do-Not-Call Registry ("DNC") in December 2007.

30.    Plaintiff was registered on the National DNC at all times relevant to this Complaint.

31.    Plaintiff has been besieged with phone calls related to a merchant cash advance (MCA).

32.    MCAs are unregulated "loans" made via an agreement to purchase future revenues of a
business. MCAs are designed to bypass usury laws that prevent companies from charging
extraordinary interest rates. MCAs often exceed 60% interest rates.

32.    Plaintiff has been inundated with phone calls from companies offering MCAs. This
includes receiving at least 28 phone calls from Defendant AR Cap soliciting MCA loans on
behalf of Defendant Direct Merchants.

33.    **Call #1-4**. Calls 1-4 were all missed phone calls placed to Plaintiff from the phone
number 786-229-9762 on March 23, 2022, and March 24, 2022.

34.    Plaintiff later received an email from Mike Ramos, mikeramos@arcapgroup.com that
revealed he was the authorized agent making the phone calls to Plaintiff from 786-229-9762.

35.    **Call #5**. On March 28, 2022, at 10:19 AM, Plaintiff received a phone call that displayed
954-363-1289 on Plaintiff's caller identification. Plaintiff answered the phone and it was Mike
Ramos on the line. Plaintiff informed Mr. Ramos he was not interested in an MCA.

36.    **Call #6.** On March 28, 2022, at 10:20 AM, Plaintiff received another phone call from
954-363-1289. It was Ramos again. Plaintiff feigned interest in order to determine who was
calling Plaintiff back-to-back despite Plaintiff having informed the agent he was not interested.

37.    Plaintiff gathered Ramos' email address and sent Ramos a copy of his driver's license in
order to get a contract from the lender that had sanctioned, authorized and directed that Ramos
call Plaintiff with MCA solicitations.

38.    **Call 7-28.** Calls 7-28 were all follow-up calls attempting to get Plaintiff to sign the
contract. Plaintiff does not seek relief for these phone calls under the TCPA.

39.    **Calls 7-28**. Calls 7-28 were all placed to Plaintiff without a valid solicitation registration
and violated Texas Business and Commerce Code 302.101.

40.    On March 28, 2022, at 11:39 AM Plaintiff received an email from Prith Shah, at
pshah@flashadvance.com. This email contained the MCA funding contract and revealed
Defendants Flash and Direct Merchants as the entities responsible for the phone calls.

41.    Page one of the contract states "Effective March 28, 2022, Direct Merchants Funding
LLC (the "Funder") hereby purchases form the above Merchant a percentage…"

42.    Page five of the contract states "28. Servicing Agent. Flash II LLC, dba Flash Advance
(the "Servicer") is the Authorized Servicing Agent of Funder for this Agreement."

43.    On April 12, 2022, Plaintiff received an email from Jacob Strelzik,
jstrelzik@flashadvance.com, that stated:

> "Hello Brandon,
>
> I am the financial investor for the cash advance that you were considering through
> AR Capital.
>
> The capital provided was coming from me and my company Flash Advance. It
> has been brought to my attention that you are no longer interested in
> the advance."

44.    The table below displays calls made to Plaintiff by Defendant AR Cap at the direction

and supervision of Defendants Direct Merchants and Flash Advance.

**TABLE A**

| Number: | Date: | Time: | Caller ID: | Notes: |
|---------|-------|-------|------------|--------|
| 1. | 03/23/2022 | 8:28 AM | 786-229-9762 | Ignored call |
| 2. | 03/23/2022 | 10:36 AM | 786-229-9762 | Ignored call |
| 3. | 03/24/2022 | 10:10 AM | 786-229-9762 | Ignored call |
| 4. | 03/24/2022 | 1:09 PM | 786-229-9762 | Ignored call |
| 5. | 03/28/2022 | 10:19 AM | 954-363-1289 | Told not interested |
| 6. | 03/28/2022 | 10:20 AM | 954-363-1289 | 7 min 36 sec.  Gathered Ramos' email information |
| 7. | 03/28/2022 | 11:45 AM | 954-363-1289 | Follow up call |
| 8. | 03/28/2022 | 12:36 PM | 954-363-1289 | Follow up call |
| 9. | 03/28/2022 | 12:59 AM | 786-229-9762 | Follow up call |
| 10. | 03/28/2022 | 1:49 PM | 786-229-9762 | Follow up call |
| 11. | 03/28/2022 | 4:06 PM | 786-229-9762 | Follow up call |
| 12. | 03/29/2022 | 7:18 AM | 786-229-9762 | Follow up call |
| 13. | 03/29/2022 | 9:12 AM | 954-363-1289 | Follow up call |
| 14. | 03/29/2022 | 10:25 AM | 786-229-9762 | Follow up call |
| 15. | 03/29/2022 | 11:38 AM | 954-363-1289 | Follow up call |
| 16. | 03/29/2022 | 3:19 PM | 954-363-1289 | Follow up call |
| 17. | 03/29/2022 | 8:27 AM | 954-363-1289 | Follow up call |
| 18. | 03/30/2022 | 10:02 AM | 786-229-9762 | Follow up call |

| 19. | 04/04/2022 | 11:57 AM | 954-363-1289 | Follow up call |
|-----|------------|----------|--------------|----------------|
| 20. | 04/08/2022 | 10:12 AM | 954-363-1289 | Follow up call |
| 21. | 04/08/2022 | 10:28 AM | 954-363-1289 | Follow up call |
| 22. | 04/08/2022 | 10:29 AM | 954-363-1289 | Follow up call |
| 23. | 04/08/2022 | 1:17 PM | 954-363-1289 | Follow up call |
| 24. | 04/11/2022 | 8:08 AM | 954-363-1289 | Follow up call |
| 25. | 04/11/2022 | 8:52 AM | 786-229-9762 | Follow up call |
| 26. | 04/11/2022 | 10:41 AM | 954-363-1289 | Follow up call |
| 27. | 04/11/2022 | 11:46 AM | 954-363-1289 | Follow up call |
| 28. | 04/11/2022 | 1:37 PM | 786-229-9762 | Follow up call |

45.     Defendants Flash Advance and Direct Merchants employ, contract, and/or authorize Independent Sales Organizations ("ISOs"), like Defendant AR Cap, to solicit MCAs to business owners.

46.     On April 28, 2023, Plaintiff searched on the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101 for any of the Defendants.

47.     Defendants AR Cap, Flash Advance, and Direct Merchants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

48.     Defendants AR Cap, Flash Advance, and Direct Merchants participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful telemarketer's calls, while

knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful solicitation calls.

49.     Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

50.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

51.     No emergency necessitated the calls.

52.     Through information and belief, Defendant AR Cap did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

53.     Through information and belief, Defendants AR Cap, Flash Advance, and Direct Merchants did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

**INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

54.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

55.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

56.     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

57.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## VICARIOUS LIABILITY OF DIRECT MERCHANTS FOR CALLS PLACED BY AR CAP

58.     Direct Merchants is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as AR Cap.  In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

59.     Direct Merchants solicits merchant cash advances ("MCAs") through direct telephone solicitation by its hired telemarketer AR Cap, who acts on its behalf.  AR Cap provides live, hot leads to Direct Merchant and Direct Merchants accepts the leads.  AR Cap was Direct Merchant's agent when it made the prohibited calls on behalf of and with the actual authority from Direct Merchants pursuant to a contract that governs AR Cap's telemarketing for Direct Merchant.

60.     Direct Merchants directs, controls, authorizes, and pays AR Cap to generate live-transfer leads for Defendant's MCAs through telephone solicitation.  Moreover, it requires, authorizes, or at least permits AR Cap's telemarketers to solicit explicitly for MCAs.

61.     Direct Merchants sets the criteria for qualifying leads, which AR Cap must follow, and AR Cap transfers leads qualified on those criteria exclusively to Direct Merchants and Flash Advance.

62.     On information and belief, Direct Merchants and Flash Advance write or at least approve the call script AR Cap's telemarketers use when qualifying leads for Direct Merchants and Flash Advance.

63.     AR Cap's telemarketers are Direct Merchants' associates and do nothing to disturb the impression that AR Cap's telemarketers work for and speak and act on behalf of Direct Merchants.

64.     From AR Cap's telemarketer's initial call through the last call received by Plaintiff, Direct Merchants' MCA solicitations constitute a singular, coordinated marketing effort devised, authorized, directed, and controlled by Direct Merchants the principal, with AR Cap acting as Direct Merchants' agent.

65.     AR Cap, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Direct Merchants' criteria, and then submitted Plaintiff's information to Direct Merchants' advisor to continue marketing merchant cash advances.

## VICARIOUS LIABILITY OF FLASH ADVNCE FOR PHONE CALLS PLACED BY AR CAP

66.     Flash Advance is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as AR Cap.  In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

67.     Flash Advance solicits merchant cash advances ("MCAs") through direct telephone solicitation by its hired telemarketer AR Cap, who acts on its behalf.  AR Cap provides live, hot leads to Flash Advance and Flash Advance accepts the leads.  AR Cap was Flash Advance's agent when it made the prohibited calls on behalf of and with the actual authority from Flash Advance pursuant to a contract that governs AR Cap's telemarketing for Flash Advance.

68.     Flash Advance directs, controls, authorizes, and pays AR Cap to generate leads for Defendant's MCAs through telephone solicitation.  Moreover, it requires, authorizes, or at least permits AR Cap's telemarketers to solicit explicitly for MCAs.

69.     Flash Advance sets the criteria for qualifying leads, which AR Cap must follow, and AR Cap transfers leads qualified on those criteria exclusively to Direct Merchants and Flash Advance.

70.     On information and belief, Direct Merchants and Flash Advance write or at least approve the call script AR Cap's telemarketers use when qualifying leads for Direct Merchants and Flash Advance.

71.     AR Cap's telemarketers are Flash Advance's associates and do nothing to disturb the impression that AR Cap's telemarketers work for and speak and act on behalf of Flash Advance.

72.     From AR Cap's telemarketer's initial call through the last call received by Plaintiff, Flash Advance's MCA solicitations constitute a singular, coordinated marketing effort devised, authorized, directed, and controlled by Flash Advance, the principal, with AR Cap acting as Flash Advance's agent.

73.     AR Cap, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Flash Advance's criteria, and then submitted Plaintiff's information to Flash Advance's advisor to continue marketing merchant cash advances.

### Plaintiff's Cell Phone is a Residential Number

74.     The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 17 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

14

**Violations of the Texas Business and Commerce Code § 302.101**

75.    The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

76.    Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

77.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

78.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

79.    Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

80.    Under Texas Business and Commerce Code § 302.302(d) Plaintiff is entitled to all reasonable costs of prosecuting the case including attorney's fees, deposition costs, investigation costs, and witness fees.

## I.    FIRST CLAIM FOR RELIEF

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

81.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-80.

82.     Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

83.     Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telephone calls described above, in the amount of $500 per call.

84.     Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

85.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

86.     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)
### (Against All Defendants)

87.     Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-80.

88.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making

16

non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

89.     Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

90.     Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for six (6) calls.

E.     An award of $5,000 in statutory damages arising from twenty-eight (28) violations of the Texas Business and Commerce code 302.101.

F.     An award to Plaintiff of damages, as allowed by law under the TCPA;

G.     An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

H.     Such further relief as the Court deems necessary, just, and proper.

Dated:  May 1, 2023,                    Respectfully submitted,


Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com

## I.      **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 1, 2023


Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com